[No. 11862. Department One. September 21, 1914.]

OREGON-WASHINGTON RAILROAD & NAVIGATION COMPANY,
*Appellant*, v. EASTERN OREGON BANKING COMPANY
*et al., Respondents.*[1]

LANDLORD AND TENANT — ASSIGNMENT OF LEASE — COVENANTS —
MORTGAGE BY LESSEE. A mortgage by a lessee upon all the buildings
and other personal property upon the leased premises is not invalid
by reason of a clause in the lease forbidding assignment of the lease
except by written permission of the lessor, it being provided that
the buildings should belong to the lessee upon termination of the
lease.

LANDLORD AND TENANT—LEASE—DEPENDENT COVENANTS—REMOVAL
OF BUILDINGS—CONSTRUCTION. Where a lease for a term of years, at
specified rent payable semi-annually and the payment of taxes,
provided that the lessee should erect buildings upon the premises
to the value of $5,000, and that the buildings and improvements then
located or to be erected on the premises should belong to the lessee
at the termination of the agreement, provided they shall be removed
within ninety days, otherwise to belong to the lessor, and further
provided that the lease should not be assigned without written per-
mission of the lessor, and that failure of the lessee to keep his cove-
nants should operate as a forfeiture of the lease with right of entry
and possession by the lessor, the right of the lessee to remove the
buildings is not dependent upon the covenants to pay rent and taxes.

SAME—IMPROVEMENTS BY TENANTS—RIGHT OF REMOVAL. In such
case, the buildings having become the property of the lessee under
the terms of the agreement, he had the right to sell or mortgage
the same, hence the right to remove the buildings was not personal
to the lessee, but passed to a mortgagee who purchased the property
upon foreclosure of his mortgage.

Appeal from a judgment of the superior court for Ska-
mania county, Back, J., entered November 4, 1913, upon
findings in favor of the defendants, in an action for equitable
relief, tried to the court. Affirmed.

*W. W. Cotton, Jas. P. Stapleton, A. C. Spencer,* and
*W. A. Robbins,* for appellant.

*Raymond C. Sly, W. B. Presby,* and *W. H. Wilson,* for
respondents.

[1]Reported in 143 Pac. 154.

. Gose, J.—This is a bill in equity to enjoin the defendants from removing certain buildings located upon property belonging to the plaintiff, at Collins Hot Springs, in Skamania county. There was a decree for the defendants. The plaintiff prosecutes the appeal.

The facts out of which this suit arose are these: On the first day of March, 1903, the Oregon Railroad & Navigation Company, the appellant's predecessor in interest, executed a lease to one C. T. Belcher, embracing the property upon which the buildings are located. The term was ten years *"unless sooner terminated"* as in the lease provided; rent payable semi-annually in advance. The agreed rental for the first five years was $311 per year, and all taxes levied upon the property and upon the improvements. For the second five years, the rental was $622 per year, plus such taxes, it being agreed that the taxes should be paid before they became delinquent. It is stipulated in the lease that:

"The party of the second part [the lessee] hereby further agrees to erect proper hotel buildings and bath houses upon the premises, and to expend on such improvements during the first term of five years a sum not less than five thousand ($5,000) dollars, and further agrees that all permanent improvements to the hot springs located on the premises, and all pipes, sewers, and conduits laid under the surface of the ground and leading to and from said springs and buildings shall, at the expiration of this agreement from whatever cause, become the property of the party of the first part; it being mutually understood and agreed that all buildings and superstructures now located or to be erected on the premises shall *at the termination of this agreement* be and remain the sole and exclusive property of the party of the second part; provided, the same shall be removed from the said premises within ninety days immediately succeeding the date of the termination of this agreement, *and if not so removed,* then and in that case the said buildings shall become the property of the party of the first part."

The lease further provides that the lessee "shall have no power to assign this lease to any other person or persons

except by written permission of the party of the first part."
It also provides: "Failure by the lessee to keep and perform
any stipulation or condition of this lease shall operate as a
*forfeiture* thereof, and the lessor may take immediate posses-
sion of said demised premises, together with all and any
buildings or improvements thereon, whether placed there by
the lessee or by any other party, and *terminate the tenancy
created hereby.*" The italics are ours. On the 17th day of
November, 1910, the lessee, Belcher, assigned the lease to
F. A. Young, with the written consent of the appellant.
Young thereupon entered into the possession of the leased
premises, and continued in the possession thereof until Feb-
ruary 17, 1913, eleven days before the expiration of the
term. In November, 1911, F. A. Young executed his promis-
sory note to one L. B. Young, and secured the same by
mortgage upon all the buildings and other personal prop-
erty upon the leased premises, and upon the same day, F. A.
Young assigned the lease to L. B. Young, without the con-
sent of the appellant. The testimony shows that the lease
was assigned for the purpose of supplementing the mortgage
security. In December, 1911, L. B. Young assigned the
note and mortgage securing the same, and also the lease, to
the respondent Eastern Oregon Banking Company, a corpo-
ration, without the consent of the appellant. Neither L. B.
Young nor the Eastern Oregon Banking Company ever en-
tered into the possession of the premises or made any claim
to the right to do so. The banking company foreclosed its
chattel mortgage upon the buildings by notice and sale, and
the property was sold to the banking company on the 17th
day of February, 1913. On that date, F. A. Young, who was
then in default for six months' rent, amounting to $311, and
for taxes amounting to $553.87, in response to a demand
upon the part of the appellant, surrendered the keys and the
possession of the leased premises to it. The Eastern Oregon
Banking Company is asserting the right to remove "all
buildings and superstructures" from the leased premises.

The appellant first contends that, in view of the clause in the lease to the effect that the lessee "shall have no power to assign this lease" except by written permission of the appellant, the assignment of the lease to L. B. Young, and by her to the banking company, was of no validity. This may be conceded. The testimony shows that the lease was assigned simply for the purpose of supplementing the mortgage security. The broader question is, under the lease and under the admitted facts, did F. A. Young own the buildings and superstructures upon the leased premises, and, if so, could he lawfully mortgage them?

The appellant makes three further contentions, (1) that the clause in the lease forbidding the lessee to assign it embraces all the provisions of the lease; (2) that the covenants in the lease for the semi-annual payment of the rent and for the payment of the taxes, the covenant against assigning without the lessor's consent, and the covenant giving the tenant the right to remove the buildings and superstructures "are mutual and dependent covenants," and that the lessee cannot break the covenants in favor of the lessor and assert the right to enforcement of those which are in his favor; and (3) that the right of the lessee to remove the buildings and superstructures from the premises is a "privilege personal to the lessee," and cannot be exercised by another.

In support of the first contention, the appellant cites *Behrens v. Cloudy*, 50 Wash. 400, 97 Pac. 450. In that case the lease was for the term of five years. It was stipulated in the lease that the lessor agreed to sell the leased property to the lessee "at any time within eight months" from the date of the lease. It was further stipulated that the lessee should not "let or underlet the *whole or any part* of said premises . . . nor assign this lease or any part thereof" without the written consent of the lessor. The lessee attempted to assign her option to purchase the property to the plaintiffs, without the written consent of the lessor, and against his will and protest. The action was for specific

performance of the agreement to sell.  The court said that
the covenant against assignment extended to and included
the option to sell; that the language of the covenant was
that the lessee would not let or underlet or assign the lease
"or any part thereof" without the written consent of the
lessor, and that the option to sell was a part of the lease.
The case was correctly decided, but is not controlling here.
Appellant also cites *Sandberg v. Light*, 55 Wash. 189, 104
Pac. 205.  There the lease included an option to purchase.
The lease was abandoned, and the court held that such aban-
donment carried with it the option; that, from the nature of
the case, the two were inseparable.  A reading of the lease,
which is set forth in the opinion, will disclose the soundness
of the view announced, and the wide difference between that
lease and the one at bar.

In support of the second contention, the appellant cites
*Toellner v. McGinnis*, 55 Wash. 430, 104 Pac. 641, 24
L. R. A. (N. S.) 1082.  Again recurring to this lease, we
find that the lessee is required to erect hotel buildings and
bath houses upon the premises, and to expend on such im-
provements during the first term of five years a sum not less
than $5,000.  It is agreed that all pipes, sewers, and con-
duits laid under the surface of the ground, "at the expira-
tion of this agreement from whatever cause," shall be the
property of the lessor.  The lease is equally explicit to the
effect that all buildings and superstructures then located
upon the premises or thereafter constructed thereon shall,
"*at the termination of this agreement*, be and remain the sole
and exclusive property" of the lessee, provided the same shall
be removed from the premises within ninety days succeeding
"*the termination of this agreement*," and "*if not so removed,*
then, in that case, the said buildings shall become the prop-
erty of the party of the first part."  It is further agreed
that the failure of the lessee to keep his covenants shall oper-
ate as a *forfeiture* of the lease, and that upon the happening
of that event, the lessor may take possession of the premises,

together with all buildings and improvements, "and *termi-nate the tenancy created hereby.*"

The parties foresaw that the lease might be terminated within the term. They covered that contingency, as well as a termination in point of time, by providing that, upon *the termination* of the lease, the buildings should be the property of the lessee if removed within ninety days from that time, and if not so removed, they should be the property of the lessor. The contingency of the failure of the lessee to keep his covenants is covered by a stipulation for a forfeiture of the lease. The method of forfeiting the lease is by a reentry and a termination of the tenancy. Forfeitures are not favored in equity, and will not be declared unless the right to that remedy is clearly expressed or necessarily implied. The only express contingency for the ownership of the build-ings by the lessor is in the event the lessee fails to remove them within ninety days succeeding the termination of the lease. As was said in *Toellner v. McGinnis, supra,* in deter-mining whether a covenant is dependent or independent, we must look "to the true intent of the parties, to be gathered from a consideration of the whole contract." Taking the contract by its four corners, as there suggested, it cannot be said that the right of the lessee to remove the buildings and superstructures is dependent upon his covenant to pay rent and taxes.

In respect to the suggestion that the right to remove the property is personal to the lessee, it suffices to say that, un-der the terms of the lease, the buildings and superstructures became the property of the lessee. This being true, he had a right to exercise the dominion of an owner over them, which includes the power to sell or mortgage. We think, under the terms of the lease, that F. A. Young became the owner of the buildings and superstructures. This being true, he had a right to sell or mortgage them. He did mortgage them, and the holder of the mortgage has foreclosed his

mortgage and purchased the property. It has succeeded to Young's title, and has a right to remove the buildings.

The judgment is affirmed.

CROW, C. J., MAIN, and ELLIS, JJ., concur.