No. 29,344.

WILLIAM NEWLANDS and C. NEWLANDS, *Appellants*, v. E. H. ELLIS, LUCILLE ELLIS, A. E. WELLINGTON and NELLIE WELLINGTON, *Appellees.*

(292 Pac. 754.)

Opinion filed November 8, 1930.

*Fred A. Walker,* of Columbus, and *C. S. Denison,* of Pittsburg, for the appellants.

*Charles Stephens, F. E. Dresia, C. E. Rumery* and *C. R. Stauffacher,* all of Columbus, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This appeal is from a judgment in favor of the lessors in an action for conversion of certain mining property, buildings, machinery and equipment belonging to the lessees in a mining lease which had been forfeited. The answer set out the terms of the lease with reference to forfeiture and removal of property placed thereon by lessees, and alleged breach of the terms of the lease, also notice of forfeiture, forfeiture, notice to remove equipment and failure to do so within the time stipulated in the lease.

The court made findings of fact and conclusions of law. The last conclusion is the one which chiefly concerns us in this appeal. It is as follows:

"Ordinarily, when a lease is terminated through the fault of the lessee, the lessee has a reasonable time in which to remove the improvements placed on said leased premises by him, but parties to a lease agreement have the right to stipulate what shall constitute a reasonable time in which to remove the improvements from the lease. In the lease in question the parties did fix a time certain in which the lessee had the right to remove the improvements from the leased premises, and the failure on the part of the lessee to exercise this privilege within the time so stipulated operated as a forfeiture of all his right, title and interest in and to any of the said improvements. This being so, at the time of the commencement of this action the plaintiffs had no right, title or interest in or to the improvements placed upon the leased premises, and, since he had no title, no action for conversion will lie."

The first errors assigned are with reference to the admission of evidence over the objection of the appellants. This evidence was concerning the failure of the appellants to pay the mineral tax. The court reserved his ruling on the objection, but in his findings of fact he used the testimony, which in effect overruled the objection. It will not be necessary to determine in this case whether such admission was erroneous or not because there were two grounds for forfeiture covered by the findings alleged in the answer and contained in the lease, viz., the payment of the mineral-reserve tax and the payment of the minimum monthly royalty of $100 which was conceded not to have been paid for the last four months before notice of forfeiture. Either one of the grounds was sufficient to sustain the forfeiture, and it is not seriously contended that the forfeiture of the lease itself was not within the rights of the lessors because of nonpayment of royalty, although there was some evidence tending to show that the failure of the lessees to comply with the terms of the lease was within the exceptions enumerated in the lease, but no finding was made thereon. So the question as to the admission of irrelevant testimony as a separate ground for forfeiture of the lease is not in any way decisive since there was another ground for the forfeiture that was completely maintained.

Our main concern here is with what took place after the forfeiture of the lease, and who has right or title to the mining equipment after the forfeiture and resumption of possession by the lessors.

The lease provided for a notice of sixty days after failure of lessees to carry out the terms of the lease before forfeiture could be declared and lessors could reënter and take possession of the premises. It further provided "that upon the termination of this lease, the second party shall have six months thereafter in which to

remove all machinery, buildings, equipment and all other improvements placed therein or thereon by second party."

Appellants contend that they were entitled to an extension of time after the expiration of the six-months' period, of which a six-months' notice was served, because of certain conversations relating to extensions, and object to the finding of the court in relation thereto. The court found that the appellants asked for an extension, but that none was granted, and concluded that no hope was held out or misrepresentations made by the appellees to operate as an estoppel. There was a conflict in the evidence as to the number, dates and substance of the conversations had on the subject of extension, but there was sufficient evidence to support the finding of the court along that line.

There is no question about the ownership of the mining equipment at the time of the forfeiture and during the six-months' period allowed the appellants in which to remove it, but appellants claim that time was not made the essence of the contract and that they still continued to be the owners of the property after the termination of such period for removal, and that title has never passed to appellees, and consequently if the appellees did not acquire title to the equipment the appropriation of it to themselves was conversion. Appellants cite many approved definitions of conversion and many cases holding that the lessee has after forfeiture of the lease a reasonable time to remove the property, but cites nothing to show that it still continues to be his property after the reasonable time has elapsed. In *Collins v. Oil & Gas Co.*, 85 Kan. 483, 118 Pac. 54, the court sustained the forfeiture, but modified the judgment so as to give the defendant a reasonable time thereafter to remove the property.

The case of *Work v. Gas Co.*, 79 Kan. 118, 98 Pac. 801, was an equitable suit to set aside and cancel an oil lease before its expiration on account of the failure of the lessee to comply literally with some of its terms, but the court refused to affirm the judgment of the trial court as to a forfeiture of the mining equipment because it would be inequitable considering the success attained by the lessee in furnishing thereunder nine producing oil wells, and the further fact that a very short time prior to the bringing of the suit plaintiff had waived the forfeiture and permitted the lessee to resume work on the lease, and he again failed in compliance.

The case of *Oregon-W. R. & Nav. Co. v. Eastern Oregon B. Co.*, 81 Wash. 617, was an injunction to restrain a mortgagee of buildings on leased premises from removing them because the lease limited the lessee's time for removal to ninety days after the termination of the lease, and judgment was rendered for the defendant whose mortgage was given long before there was any failure or forfeiture under the terms of the lease. There was no forfeiture, either of the lease or of the buildings, only a situation that might support a forfeiture and that culminated only eleven days before the termination of the lease.

Here we have a complete forfeiture of the lease and a subsequent complete forfeiture of the right of removal. The court found that without any excuse appellees here failed to exercise their privilege, which operated as a forfeiture of all their rights. We have the situation the same as if in the two Kansas cases above mentioned, where the lessees were given by the court a reasonable time in which to remove the buildings, and they come back to the court saying, we have no excuse for not removing them within the time granted, but we want your further help to get the property or the value thereof.

In 36 C. J. 180, under the heading of Landlord and Tenant, cited by appellants, are given the various holdings on this question, which are by no means uniform. While the text strongly leans to the equitable view that failure to remove within the stipulated period will not generally produce a forfeiture and that equity will relieve against the condition requiring removal within a stipulated time where a delay is not willful, yet in the same paragraph it is stated that on failure to remove buildings within a reasonable or stipulated period it is presumed that they have been abandoned.

Of course, the right of the lessees to remove buildings reserved by the lease is not affected by the breach of the covenants which forfeited the lease itself. Under such reservation the lessees have the same right with reference to the removal of buildings after the forfeiture of the lease as they would have had after the termination thereof by lapse of time. Buildings and the kind of mining equipment here involved are generally regarded as fixtures and become a part of the realty unless reserved, and the only right the lessees have in this case to the property is by virtue of the reservation in the lease. If they had limited themselves to a very few days for such removal, the courts most likely would have held the period

was not a reasonable time and extended it, but such would be a privilege of removal before passing of title to landlord rather than a right of ownership or recovery therefor after surrendering possession of the lease. The real question here involved is, Where is the title in this property vested? Being fixtures attached to the land, they belong primarily and necessarily to the owner of the land, but that rule is changed by the reservation in the lease. By that reservation they belong during the life of the lease to the tenant. At the termination of the lease by expiration of period or by forfeiture the reservation ends except, by the equitable rule of the court or by stipulation in the contract, a reasonable time is afforded to remove them thereafter.

"The tenant's failure to remove the fixtures within the proper time has the effect of vesting the title thereto irrevocably in the landlord." (26 C. J. 706.)

With the title thus in the landlord, the rights of the lessee are not usually a matter of right based on ownership but of equitable privilege because of some unavoidable misfortune, which accounts for the cases cited being of that general character. The rule is forcibly stated and the distinction made between fixtures and personal property in section 94 on the subject Fixtures in 26 C. J., a part of which is as follows:

"What is the exact meaning of some of the statements above recited, as to the time for removal of fixtures, is somewhat difficult to say; but a number of cases recognize the right of the tenant to remove fixtures even after the term, provided he does so before he relinquishes possession of the land, it being said in some that he may make the removal before the relinquishment of possession, and in others that he must do so. The English cases appear on the whole to be adverse to the right of the tenant to remove fixtures after the term, even though he is still in possession, and a like view has been taken in Canada.

"Theory of abandonment. The view that a tenant holding over his term has the right of removal and that he loses the right by relinquishing possession of the premises has been based on the theory that, by yielding possession, he indicates an intention to abandon the fixtures, and that no presumption of such an intention arises so long as he continues in possession. But, as has been well remarked, if the right to remove fixtures is to be controlled by a presumption of intention to abandon vel non, the right to remove chattels on the land not affixed thereto should also be so controlled, but it is generally recognized that the tenant does not lose his right to such chattels by relinquishing possession of the land. This theory of a presumption of abandonment, however, seems the only possible one on which, in any jurisdiction in which removable fixtures are regarded as personalty, the view that the right

of removal is lost by the tenant's relinquishment of possession can be supported. On the other hand, regarding the fixtures as constituting a part of the land, with a mere right of removal in the tenant, it is perhaps difficult to see why a tenant should be enabled, by wrongfully holding over, to extend the period for removal, thus profiting by his own wrong." (p. 706. See, also, 11 R. C. L. 1070.)

Many cases are cited by appellees which follow and recognize this generally accepted view of the question here involved to the effect that the tenant loses his right to remove improvements affixed to the rented land after the termination of his lease and a reasonable time thereafter, taking into account all the circumstances that might affect the reasonableness of the time either stipulated or allowed by court, among which cases are the following: *Cowgill v. Little Persimmon Mining Co.*, 183 S. W. (Mo. App.) 346; *Terry v. Crosswy*, 264 S. W. (Tex. App.) 718; *Hughes v. Kershow*, 42 Colo. 210; *Burns v. City of New York*, 143 N. Y. Supp. 952.

In the opinion of the last case above cited it was said:

"In the lease held by plaintiff the tenant is given ten days after the expiration of the lease within which to remove the buildings, but it is provided that he may not do so 'at any time thereafter.' Plaintiff has allowed the ten days to elapse and has not removed the building. She has thus forfeited the right to do so. It has become the property of the landlord by operation of law, and plaintiff has no valid claim to be paid its value." (p. 955.)

In a coal-mining case decided by the supreme court of Arkansas it was said:

"The lessee of property should remove machinery and other improvements from the leased premises within a reasonable time after the expiration of the lease, and where he fails to do so he may lose that right where the owner and a subsequent lessee assume possession of the same." (*Heim v. Brock*, 133 Ark. 593, syl.)

Appellants suggest there is a confusion here between abandonment and forfeiture as applied to the mining equipment. The only legal distinction between them, as expressed by Lindley in his work on Mines (vol. 2, 3d ed., 1596), is that abandonment has in it the element of intention.

The feature of abandonment may not properly be in this case, but if it is, the testimony of the appellants would not well refute the presumption that might exist, as stated by some of the authorities above cited.

There is no claim by appellants that six months was not a reasonable time and with their claim based upon title, right and ownership

of property we. have no hesitancy in approving the conclusion reached by the trial court that the appellants have forfeited their right to the property in question.

The judgment is affirmed.