**SMITH v. UNITED STATES.**

No. 2075.

Circuit Court of Appeals, Tenth Circuit.

June 29, 1940.

Dyke Ballinger, of Miami, Okl. (A. C. Wallace and Bryce Ballinger, both of Miami, Okl., on the brief), for appellant.

Frank J. Dugan, Atty., Dept. of Justice, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., Whitfield Y. Mauzy, U. S. Atty., of Tulsa, Okl., and Charles R. Denny, Jr., and Jacob N. Wasserman, Attys., Dept. of Justice, both of Washington, D. C., on the brief), for the United States.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

On October 2, 1924, the heirs of Ruth Goodeagle, acting pursuant to the Act of March 3, 1921, 41 Stat. 1225, 1249, entered into a written lease with George W. Moore, whereby they leased a restricted Quapaw allotment to Moore for mining purposes for the term of ten years from October 2, 1924, and for such additional period as lead and zinc minerals should be found therein in paying quantities. The lease was duly approved by the Secretary of the In-

terior. It provided that the lessee should at all times conduct the mining operations in a workmanlike manner; that they should be carried on continuously, market conditions considered, and should not be suspended at any time to exceed ten days in any one month without the written consent of the Superintendent of the Quapaw Indian Agency;[1] that the lessee should not cease operations on account of market conditions unless he should have on hand in the bins at the mill and ready for sale not less than 100 tons of lead and zinc concentrates; that a consent of the Superintendent for cessation of mining operations should not exceed thirty days; and that special shut-down permits might be granted by the Secretary of the Interior upon application of the lessee for good and sufficient reasons.

It provided for certain advance royalties and that matured advance royalties should not be discharged and, if paid, should not be refunded because of any subsequent surrender or cancellation of the lease.

It further provided that upon the violation of any of the terms or conditions of the lease the Secretary of the Interior should have the right, at any time after thirty days' notice to the lessee specifying the terms or conditions violated, to declare the lease forfeited and terminated, unless such violations should be corrected prior to the date of such declaration, and that upon such cancellation the Secretary of the Interior should be authorized to take immediate possession on behalf of the lessor, without notice to quit, demand of possession, or any other legal proceeding.

It further provided that the lessee should have the right to erect all necessary buildings and machinery on the land for the purpose of mining and milling the ores and minerals thereon, and to remove the same at the termination of the lease, but that such removal should be accomplished within ninety days after such termination.

By mesne assignments the lease vested in Wesley M. Smith on May 27, 1927. On January 1, 1936, the mine on the lease ceased to produce lead and zinc ores in paying quantities and Smith, without securing the requisite permit, ceased mining operations thereon. On April 1, 1936, Smith removed the pump from the mine and permitted it to become flooded. On April 22,

1936, Smith paid the advance royalty due October 2, 1935.

On June 11, 1936, a written notice, signed by the Assistant Secretary of the Interior, was served upon Smith. It stated that no "shut-down" or other permit to suspend mining operations had been granted; that Smith had failed to comply with the terms and conditions of the lease by failing to conduct mining operations thereon diligently and continuously and by failing to conduct mining operations thereon in a workmanlike manner in that he had removed the pump and permitted the mine to become flooded with water; and that within thirty days from the date thereof the lease would be forfeited and terminated for failure to comply with the terms thereof.

On July 11, 1936, Smith wrote the Superintendent requesting that the time for cancellation be extended until August 31, 1936, to permit prospect drilling to a level below the old workings. On recommendation of the Superintendent, the Commissioner of Indian Affairs granted the request. Smith failed to resume mining operations on the lease and on September 29, 1936, the Assistant Secretary of the Interior cancelled the lease.

On October 6, 1936, the Superintendent notified Smith that the lease had been cancelled on September 29, 1936, and called his attention to the provision of the lease giving him the right to remove buildings and machinery within ninety days after the termination of the lease.

On January 21, 1937, the Superintendent notified Smith in writing that the buildings and machinery which remained on the lease had become the property of the landowners.

On April 14, 1938, the United States brought this action against Smith seeking a judgment enjoining him from removing the mill and office buildings, concentrating machinery, derrick and ore bin located on the leased premises and adjudging that the title thereof was in the heirs of Ruth Goodeagle. From a judgment granting the relief prayed for, Smith has appealed.

■ The Secretary of the Interior is charged with the management of all Indian affairs. 25 U.S.C.A. §§ 1, 2. By the Act of March 3, 1921, 41 Stat. 1225, 1249, the Secretary of the Interior was specifically empowered to administer leasing of re-

---

[1] Hereinafter referred to as the Superintendent.

stricted lands allotted to or inherited by Quapaw Indians. Furthermore, by the express terms of the lease the Secretary of the Interior was empowered to declare the lease forfeited and terminated for violation of its terms or conditions by the lessee. Smith violated the terms of the lease and the Secretary of the Interior, after due notice, declared the lease forfeited and terminated. The power of the Secretary of the Interior so to do is clear. [2]

In cancelling the lease the Secretary of the Interior acted administratively and in behalf of the Indian lessors. For this reason, Mosgrove v. Harper, 33 Or. 252, 54 P. 187, is clearly distinguishable.

■ A clear and explicit provision in a lease for forfeiture for breach of its covenants is valid and upon a breach by the lessee, may be enforced at the election of the lessor. [3]

■ Furthermore, the ten-year period expired on October 2, 1934, and, therefore, the lease terminated, according to its terms, on January 1, 1936, when it ceased to produce lead and zinc minerals in paying quantities. [4]

■ The acceptance on April 22, 1936, of the advance royalty due October 2, 1935, did not estop the Secretary of the Interior to declare the lease cancelled and terminated. By the express terms of the lease, the lessee was not to be relieved from matured royalties by reason of any subsequent surrender or cancellation of the lease. [5]

■ Where a lessee is given the right to remove fixtures, he must exercise that right within a reasonable time. When the lessee fails to remove the fixtures within a reasonable time he loses his right thereto. [6] The parties may stipulate as to what shall constitute a reasonable time. [7]

■ Here, Smith failed to remove the fixtures within the stipulated period or within the period of more than eighteen months which intervened between the declaration of termination by the Assistant Secretary of the Interior and the bringing of the instant action. It is clear that he did not avail himself of his privilege within a reasonable time and that he lost his rights thereto.

We conclude that the judgment below was right and it is, therefore, affirmed.

---

[2] Wade v. Fisher, 39 App.D.C. 245; United States v. Comet Oil & Gas Co., 8 Cir., 202 F. 849.

[3] M. Karam & Sons Merc. Co. v. Serrano, 51 Ariz. 397, 77 P.2d 447, 451; Miller v. Havens, 51 Mich. 482, 16 N. W. 865, 867;

Clifford v. Androscoggin & K. R. Co., 121 Me. 15, 115 A. 511, 513;

Clark v. Service Auto Co., 143 Miss. 602, 108 So. 704, 706, 49 A.L.R. 511;

Blue Ridge Coal Co. v. Hurst, 196 Ky. 432, 244 S.W. 892, 893;

3 Thompson on Real Property, 1939 Ed., p. 694, § 1458;

1 Underhill, Landlord and Tenant, 1909 Ed., p. 625, § 391;

American Surety Co. of New York v. United States, 10 Cir., 112 F.2d 903, decided May 29, 1940.

[4] Continental Oil Co. v. Osage Oil &

Refg. Co., 10 Cir., 69 F.2d 19, 23, and cases there cited.

[5] See United States v. Comet Oil & Gas Co., supra, 202 F. at page 853;

Montana Eastern Limited v. United States, 9 Cir., 95 F.2d 897, 900.

[6] Newlands v. Ellis, 131 Kan. 479, 292 P. 754, 755–757;

Kentucky Block Cannel Coal Co. v. Stacy, 266 Ky. 59, 98 S.W.2d 61, 62;

Louisiana Oil Refining Corp. v. Haltom, 188 Ark. 117, 64 S.W.2d 98, 99;

Michaels v. Pontius, 83 Ind.App. 66, 137 N.E. 579, 581;

Terry v. Crosswy, Tex.Civ.App., 264 S.W. 718, 720.

[7] Hughes v. Kershow, 42 Colo. 210, 93 P. 1116, 1117, 15 L.R.A.,N.S., 723;

Newlands v. Ellis, supra, 292 P. at page 755;

Vanhoozer v. Gattis, 139 Ark. 390, 214 S.W. 44, 46.