## UNITED STATES v. PILOT OIL CO.
### No. 2882.

District Court, D. Wyoming.
Feb. 23, 1944.

Carl L. Sackett, U. S. Atty., and John C. Pickett, Asst. U. S. Atty., both of Cheyenne, Wyo., for plaintiff.

C. R. Ellery, A. G. McClintock and Norman B. Gray, all of Cheyenne, Wyo., for defendant.

KENNEDY, District Judge.

This is a suit on behalf of the United States to quiet title in one Hazel Enos Engavo, a restricted Shoshone Indian, to a petroleum storage tank located on the Wind River Indian Reservation. Issue was joined by defendant claiming the ownership of said tank and such ownership together with the disposition of the same is the matter here in controversy.

Briefly stated, the facts are substantially as follows: One Susanna Enos, a restricted member of the Shoshone Tribe of Indians, was granted an allotment of land on the Wind River Indian Reservation in Fremont County, Wyoming, which at the time of the death of the said Susanna Enos was trust land and under the jurisdiction and control of the Secretary of the Interior of the United States. Susanna Enos subsequently died and her sole heir is Hazel Enos Engavo, also a restricted Indian. In 1914 an oil and gas mining lease on the Enos land was granted by the Superintendent of the Indian Agency to one Earl Warren with the approval of the Secretary of the Interior and was subsequently assigned to the Hall Oil Company and by it to the Glenrock Oil Company whose interest was later purchased under a judgment and execution by the Argo Oil Company which occurred in June, 1933. At one time in the early 1930's the Secretary of the Interior elected to declare the lease forfeited on account of the violation of its terms and subsequently a

notice was given to the lessee that, under the terms of the lease, the lessee should remove all its paraphernalia from the lease but no action seems to have been taken further in the matter except there is evidence of correspondence between the Superintendent of the Agency and an agent of the defendant Company looking to the removal of the tank from the Enos land. In the original lease it is provided that all tools, derricks, pipe lines, tanks, engines and machinery and casing of all dry or exhausted wells, which shall remain the property of the lessee, may be removed at any time prior to 60 days after termination of the lease. There seems to be nothing in evidence which justifies the conclusion that the Government, through its operating agencies up until the filing of this suit, ever formally notified any owner of the tank that it must be and should be removed.

The history of the tank leads to the conclusion that it was located upon the property in question by the Midwest Refining Company, a corporation, which was then operating largely in the production and refining of oil in central Wyoming. It seems that the tank was erected with the permission of Hall, who was then the lessee of the Enos land, but the title to the tank was retained in the Midwest Company. The tank was constructed and used for the purpose of collecting oil, not only from the Enos lease, but generally from the entire oil field which consisted largely of Indian lands of the same character as the Enos land. From the use of the tank as a collection instrumentality through gathering pipe lines the oil was piped to Riverton where a refinery was operated by Midwest. Under the arrangement with the Hall Oil Company in 1916 that Company was entitled to storage in the tank to the extent of 20,000 barrels for a period of one year free of charge but thereafter a reasonable compensation for such storage was to be ascertained by mutual agreement. During the period of several years, as before stated, the tank was used for the collection of a greater part of the oil produced in the entire field consisting largely of the same type land as the Enos land. The records disclose that for a number of years there was a total production in the field of some 50,000 barrels to which the Enos lease contributed approximately 12,000 barrels and that later, while there was still production in the field for which the tank was used, there was no production from the Enos lease. In 1921 the Midwest Refining Company sold all of its equipment and other property situated in the field with the exception of the storage tank to which it retained title, this sale being made to the Glenrock Oil Company. Subsequently the Midwest Refining Company transferred its interest in the tank to the Stanolind Oil & Gas Company and after the Argo Company came into possession of the lease upon the land and commenced to operate oil properties, the Argo purchased and secured a bill of sale to the tank in controversy which it used in connection with carrying on its operations but through the instrumentality of trucks rather than the pipe line which had been abandoned. Later, and in about 1936, one Birch received a bill of sale for the tank in question, the title to which was retained until its transfer to the defendant Company.

█ The contention of the Government seems to be two-fold. First, that under the terms of the lease, it not having been removed within sixty days after the cancellation of the lease, it became forfeited to the Government to be held for the benefit of the restricted Indian owners or, second, that the tank had become a fixture to the land and the ownership therein passed as a part of the realty. The Government relies upon the case of Smith v. United States, 10 Cir., 113 F.2d 191, in principal support of its first proposition. That case would be determinative of the rights of the government in the case at bar had the tank been placed thereon and owned by the lessee but, as has been seen, the tank was placed there for the benefit of other Indian lands and, incidentally, was only located upon the Enos tract as a matter of convenience. For this reason the Smith case, in my opinion, ought not to control, particularly inasmuch as the Government had knowledge through its records of the oil produced in the field and in connection with which production, storage and distribution the tank was used for the benefit of all. This leads to the conclusion that the tank was at all times an instrumentality separate and distinct from the Enos lease except as it may have been used for a portion of the time in the production of oil from that particular land. As to the claim of the Government that the tank is a fixture and should go with the land, the record in the matter of the history of the tank and the purposes for which used would seem to justify a conclusion that the tank was not permanently attached to the land. In the first place the Court may take judicial notice of

534

the fact in petroleum development that the ordinary paraphernalia consisting of derricks, operating machinery and storage tanks are but temporary equipment for use in the production of oil in a given area and ordinarily, unless the matter is covered by contract, are considered as removable and that it is the general intention of both parties that they will be eventually removed. Second, the lease if it were operative itself in the premises, in the matter of controlling title to the tank, indicated that it was the intention of the parties that all paraphernalia and equipment used in the production of oil should be removed; and third, it is a construction indulged by the Courts that a mere temporary tenant or licensee placing improvements of a temporary character upon land has an implied right to remove them at the expiration of the term of the beneficial occupancy. Defense counsel call attention to this phase of the law which is laid down by the Wyoming Supreme Court in School District No. 11, Laramie County, v. Donahue, 55 Wyo. 220, 97 P.2d 663.

On the other hand, the defendant advances the argument that the government, having consented to the location of the tank being maintained and its use for restricted Indian land owners, for a long period of time, is estopped from now asserting any ownership to the tank or any valid objection to its maintenance upon the Enos land and that defendant stands in the relationship of an irrevocable licensee in the possession and maintenance of the tank.

Like the frailties existing in the theory of the plaintiff I find them likewise inherent in these theories of the defendant. I am doubtful if the theories of irrevocable license and estoppel could be put into operation as against the Government under the circumstances existing in this case. It is unnecessary to expand this theory and support it by cited authority for the reason that if it ever could be indulged against officials who represent the government, the circumstances of the particular case do not justify its exercise here. It would likewise appear to be inequitable that an irrevocable license could be set up by which the defendant could continue to have the ownership and use of the property upon which the tank is located without remuneration. The most equitable solution would seem to be that the suit itself be considered in the nature of a notice to the defendant which is found to be the owner of the tank and that it must be removed from the land within a reasonable time. In fact this conclusion is forecast in the trial briefs of both the plaintiff and the defendant. The plaintiff suggests in its brief that in the event the Court cannot reach the conclusion that the tank was an incident of the lease or that it had become a fixture on the land, that the least that could be done in plaintiff's favor would be to order its immediate removal. The defendant suggests in its brief that, in the event the Court cannot find that the defendant holds title to the tank in place against the government through an irrevocable license and it is estopped from contending otherwise, that the most that the plaintiff should expect would be in the nature of an order giving the defendant a reasonable time to remove the tank. It would seem from these observations of counsel that they have solved the problem themselves in advance and forecast what might be a reasonable solution of the controversy.

The conclusion is that the tank was not placed upon the Enos lease by the lessee but by an independent agency which operated it for the benefit not only of the Enos production but of other production in the Pilot-Butte Oil Field, consisting largely of Indian leases which was for the benefit of the plaintiff and its Indian wards; that the defendant should be adjudged to be the owner of the tank in question and that no other specific notice having been given by the plaintiff to any owner of the tank to remove the same, that this suit should be construed in the nature of a notice to remove the tank from the land where now situated and that the defendant should be entitled to a period of 90 days from and after the entry of the judgment herein in which to remove the tank from the Enos lease or to dispose of it in such a manner as to be satisfactory to plaintiff.

If either plaintiff or defendant desire findings of fact and conclusions of law for the purposes of appeal, the same may be submitted by collaboration of counsel on or before March 10, 1944, together with an appropriate judgment; or, in the event findings and conclusions are not desired by either party, they may waive such requirement by stipulation and an appropriate judgment only submitted within the time stated, each party to pay its own costs. The Clerk may enter an order accordingly.