(876 P.2d 171)
No. 70,294

JOHN I. EICHMAN, ADRIAN C. EICHMAN, and MELVIN EICHMAN,
*Appellees,* v. LEAVELL RESOURCES CORP., ENERIC 1990 ARBUCKLE
JV, and RUSS LEAVELL, *Appellants.*

Petition for review denied 255 Kan. 1001 (1994).

Opinion filed June 10, 1994.

*Don C. Staab*, of Hays, for the appellants.

*Randall W. Weller*, of Jones & Weller, P.A. of Hill City, for the appellees.

Before PIERRON, P.J., BRAZIL, J., and JOHN E. SANDERS, District Judge, assigned.

SANDERS, J.: Leavell Resources Corporation *et al.*, (Leavell) appeal the district court's ruling which canceled Leavell's oil or gas lease for nonproduction, finding that certain leasehold personal property reverted to the owners of the mineral interest, John Eichman, and other Eichman family members, and granting a money judgment to Eichman for revenues from oil sold by Leavell from the lease.

In 1975, the Eichman family executed an oil or gas lease to Marshall Denny covering a tract of land in Graham County, Kansas. The habendum clause in the lease provided that the lease "shall remain in full force for a term of one (1) years from this date, and as long thereafter as oil or gas, or either of them, is

produced from said land by the lessee, or the premises are being developed or operated." The lease further provided that "[l]essee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing."

The Eichman well, drilled during the primary term of the lease, produced oil in paying quantities, thereby extending the lease into its secondary term. Over the years, the lease was assigned to various parties, eventually ending up in the hands of Leavell in July 1990.

During that same year, the Eichman family became suspicious of the oil operations and discovered that the Eichman well apparently had not produced oil in paying quantities for several years. In February of 1992, Eichman sent a demand letter to Leavell stating that Eichman considered the lease to be abandoned and requesting that Leavell remove itself from the premises. Leavell did not respond, and in September of 1992, this action was commenced. Eichman requested that the district court declare the lease abandoned, return possession of the land to the Eichman family, and award appropriate damages.

At trial, Leavell's field operator testified that the Eichman well was pumping oil when Leavell purchased the lease in July 1990. Leavell produced invoices showing that it had paid for the operating expenses incurred by the previous leaseholders in January, February, and March 1990. The evidence further showed that as of February 1992, Leavell had expended $20,532.42 on the Eichman well and sold oil produced from the well for $8,681. There has been no production from the Eichman well since February 1992, the month the Eichmans served the demand upon Leavell to vacate the premises.

Tax rendition statements produced at trial showed oil sales from the Eichman well of 320 barrels of oil in 1987 and 214 barrels in 1988. The last sale of oil in 1988 was in July of that year. No oil was produced during the balance of 1988, in all of 1989, or the first half of 1990. There was no further sale of oil until March of 1991, when 128.9 barrels were sold. Testimony showed that this oil was produced sometime during the latter part of 1990, but that the oil was held in the tank battery until the March 1991 sale. Leavell's vice-president admitted that apparently no

oil was produced from the Eichman well between February 1988 and July 1990, but he said that it was not unusual for an oil lease to be down for short periods during its development.

A title opinion drafted by Leavell's attorney prior to purchase of the lease warned Leavell that "[t]his is a shut-in lease, and in order to fully protect yourself, you should make sure that the royalty owners are willing for you to take over."

The record before us is entirely blank concerning activities or operations on the lease between February 1988 and January 1990. In early 1990, some reworking operations were apparently started by Leavell's immediate predecessor in title.

The district court found that the last production from the Eichman well was in 1988 and that the "lease had ceased producing oil in paying quantities as of the end of 1989, and was terminated." The court held that "[t]he lease did not exist when the defendant attempted to purchased [sic] it as it had already expired by its own terms." The court observed that Leavell had been warned of this possibility in its attorney's title opinion. The court also awarded the leasehold equipment to the Eichmans and entered judgment in their favor for $8,681.79 for oil sold by Leavell after the lease had terminated.

Leavell argues that there was not substantial evidence to support the trial court's determination that the lease had permanently ceased production prior to Leavell's acquisition of the lease. Leavell also maintains the trial court failed to consider Leavell's intent and reworking activities in light of the specific language in the habendum clause concerning "development or operation of the premises". Leavell concedes that the Eichman lease is now abandoned and has been since February 1992, but asks that it be allowed to reenter the property, remove its equipment, and plug the well.

It has long been the rule in Kansas that when the primary term of an oil or gas lease has expired and the lease is being held upon the condition of continued production only, all rights under the lease terminate if and when production of oil or gas in paying quantities ceases. *Kelwood Farms, Inc. v. Ritchie*, 1 Kan. App. 2d 472, Syl. ¶ 2, 571 P.2d 338 (1977). "However, it is also true that a mere temporary cessation of production because of necessary developments or operation do not result in the ter-

mination of such lease or the extinguishment of rights acquired under its terms." *Wilson v. Holm,* 164 Kan. 229, 237, 188 P.2d 899 (1948).

If there is a halt in production at an oil leasehold, the burden is upon the lessee to prove that the cessation is temporary and not permanent. *Wilson,* 164 Kan. 229, Syl. ¶ 6. Whether the cessation of production is temporary or permanent is a question of fact to be determined by the trial court, and such finding will not be disturbed on appeal if it is supported by substantial competent evidence. *Wrestler v. Colt,* 7 Kan. App. 2d 553, 556, 644 P.2d 1342 (1982).

There are three factors relevant to whether a cessation is temporary or permanent: (1) the period of time cessation has persisted; (2) the intent of the operator; and (3) the cause of cessation. *Kelwood Farms,* 1 Kan. App. 2d at 479 (citing 2 Williams and Meyers, Oil and Gas Law § 334.8, p. 164). In general, no one of these elements can be isolated and held to be decisive. 1 Kan. App. 2d at 479.

Eichman introduced uncontested evidence at trial to show that oil production from the lease ceased from the period of February 1988 through July 1990. At that point, the burden shifted to Leavell to prove that the cessation was only temporary and that development of the well was continuing during that period. The only evidence Leavell produced in that regard was the fact that the prior leaseholder contracted to have some repair work done on the equipment during the early spring of 1990, just prior to the sale of the lease to Leavell. Leavell introduced no evidence of any production or development of the well during 1989, the year in which, according to the court, the lease terminated. Furthermore, Leavell introduced no evidence of the intent of the well operators during 1989 or of the cause of the cessation.

There was substantial competent evidence from·which the trial court could conclude that Leavell failed in its burden of proving that the cessation was temporary.

Leavell argues that the cessation of production during 1989 is not the only factor to consider because of the additional specific language in the lease that it would remain in effect as long as oil or gas is produced *or the premises are being developed or operated.* Leavell contends that even though no oil was produced

from the Eichman well during 1989, the leaseholder was still operating and developing the lease.

Although most Kansas cases construing habendum clauses in oil or gas leases deal only with clauses that condition extension of the lease upon continued production, the Kansas Supreme Court did consider a dispute arising from a lease that contained an "as long as the property is being developed or operated" condition in *Wagner v. Sunray Mid-Continent Oil Co.*, 182 Kan. 81, 82, 318 P.2d 1039 (1957). However, the words "developed" and "operated" were not made an issue in the case, and the *Wagner* court did not focus on the additional phrase, interpreting the habendum clause as if it conditioned extension of the lease on continued production alone. 182 Kan. at 88.

We believe Leavell attaches too much significance to the "developed and operated" language in its lease. Webster's Ninth New Collegiate Dictionary 347, 827 (1991) defines "develop" as "to make active, . . . to promote the growth of, . . . to make available or usable" and defines "operate" as "to produce an appropriate effect, . . . to cause to function, . . . to put or keep in operation." When viewed in the light of oil and gas operations, these words sound suspiciously like the temporary cessation rule. The leaseholder is required to move promptly and by its efforts establish that the cessation of production, regardless of its cause, was temporary and not permanent. *Wilson*, 164 Kan. at 240. In other words, the lessee must prove that "development" and "operations" are continuing in a timely fashion despite the cessation in order to retain its interest in the lease.

Williams and Meyers observed that interpretations of "so long as oil and gas is produced or the property is being developed or operated" clauses are very sparse. 2 Williams and Meyers, Oil and Gas Law § 334.2, p. 133 (1993). However, the authors reached the following conclusion as to the construction of that phrase:

"If at the end of the primary term of the defeasible interest oil or gas is being produced (in paying quantities if required) on the land and such production thereafter ceases in the secondary term of the defeasible interest, the interest will not terminate if drilling operations, reworking operations, or similar activities in pursuit of oil or gas are engaged in within a reasonable time after such cessation of production. The term interest will be preserved

as long as such operations are continued with due diligence and if production results, so long as production lasts. But when operations cease and are not resumed within a reasonable time, the term interest terminates. If the operator ceases operations with the intention of abandoning the premises the interest terminates unless the term owner (who in order to do so himself must have a mineral interest) commences operations or others do so within a reasonable time after such abandonment." 2 Williams and Meyers §334.2, pp. 133-34.

Additionally, regardless of how the language of the habendum clause is construed, Leavell's failure to produce evidence of the intent of the operators in 1989 or any development or repair activities during that time proves fatal to its claim. In the absence of contrary evidence, when production from a well ceases, then operation and development also ceases. Since the record is silent in this respect, we can only conclude that Leavell's predecessor did nothing. See *Wagner v. Sunray Mid-Continent Oil,* 182 Kan. at 91.

We are not unmindful of the fact that Leavell expended significant sums of money in an effort to produce the well and that some oil was subsequently obtained. However, by the time Leavell assumed the lease in 1990, it had already terminated. No amount of money or effort expended on the Eichman well by Leavell could breathe new life into the lease. See *Wagner v. Sunray Mid-Continent Oil,* 182 Kan. at 89.

There was substantial competent evidence presented from which the district court could properly conclude that the Eichman lease had lapsed by its own terms due to permanent cessation of production at the end of 1989.

Since the termination of the lease at the end of 1989 also terminated any rights the lessee may have had to the oil thereafter, it is clear that title to any oil produced in 1990 and thereafter belonged to the Eichmans. The evidence was uncontested that the value of the oil removed by Leavell during 1990 and subsequent thereto was $8,681.79. The trial court was correct in entering judgment in that amount in favor of the Eichmans.

A harder question is presented on the issue of ownership of the leasehold personal property remaining on the lease. The trial court awarded this property to the Eichmans, treating Leavell's interest in the personalty as terminating at the same time as the lease itself.

The lease provisions granted the lessee the right to remove at any time all machinery and fixtures placed on the leasehold, including the right to draw and remove casing.

In *Pratt v. Gerstner*, 188 Kan. 148, Syl. ¶¶ 1, 2, 360 P.2d 1101 (1961), the Kansas Supreme Court construed a clause in an oil and gas lease that gave the lessee the right to remove machinery, fixtures, and casing "at any time" to mean that the lessee could remove the equipment "within a reasonable time" after termination and that what constitutes "reasonable" depends upon the surrounding facts and circumstances.

The Eichmans argue that when Leavell's rights to the lease ended by virtue of nonproduction of the lease, so went their rights to the equipment and that since Leavell's predecessors had no right to the equipment, neither does Leavell. The Eichmans cite *Pratt* and *Newlands v. Ellis*, 131 Kan. 479, 292 Pac. 754 (1930), in support of their proposition.

Neither case deals with the exact question presented here: What rights does a lessee have, if any, to remove leasehold equipment following an *involuntary* termination of a lease which was contested in court? The Kansas appellate courts have not issued a definitive ruling on this question.

In *Pratt*, the lessee had voluntarily executed a release of the lease, relinquishing all rights and interest in the lease back to the landowners. 188 Kan. at 149. The lessee then waited some 22 months before attempting to pull the casing. The Supreme Court found that under such circumstances the lessee did not remove the equipment within a reasonable time. In his concurring opinion, Justice Fatzer pointed out that "[t]his is not a case involving the right to remove casing after an oil and gas lease is terminated by reason of cessation of production and where no written release is given the lessor by the lessee." 188 Kan. at 152.

In *Newlands*, the parties had specifically provided in their lease " 'that upon the termination of this lease, the second party shall have six months thereafter in which to remove all machinery, buildings, equipment and all other improvements placed therein or thereon by second party.' " 131 Kan. at 480-81. The Supreme Court stated that "[a]t the termination of the lease by expiration of period or by forfeiture the reservation ends except, by the

equitable rule of the court *or by stipulation in the contract,* a reasonable time is afforded to remove them thereafter." (Emphasis added.) 131 Kan. at 483. There was no argument that six months was not a reasonable time, and the Supreme Court had no trouble in determining that the lessees had forfeited their right to the equipment by not retrieving it within the stipulated six-month period. 131 Kan. at 485.

In the case at hand, the lessee in possession of the Eichman leasehold in 1989 probably did not realize that its lease had terminated. It may well have believed that it was still "operating or developing" the well. When Leavell assumed the lease, the well was in operation, and Leavell continued to produce oil from the well and expend money thereon until February 1992. Even if Leavell had reason to believe from its attorney's title opinion that there might be a problem with the shut-in provision of the lease, it does not necessarily follow that Leavell had reason to believe that its rights to the mining equipment were jeopardized since the continuing activity on the lease in 1990 and thereafter would not make it readily apparent that the lease had been abandoned or become forfeited. When the Eichmans served their demand upon Leavell and brought this action to quiet title, Leavell defended its interest in the lease in good faith. Under the circumstances Leavell should have a reasonable time to remove its equipment after entry of the court judgment evicting them from the property.

Such a solution was ordered by the court in *Idalia Realty & Development Co. v. Norman,* 183 S.W. 348 (Mo. App. 1916). Though not an oil and gas case, the result reached in *Idalia Realty* is instructive. In that case, a tenant erected a sawmill and attendant buildings on his leasehold. A dispute arose over the terms of an extension clause in the lease, and the landlord brought an action in ejectment against the tenant. The tenant remained on the land for over six years while the litigation progressed. When the Missouri Supreme Court finally declared that the lease had terminated years earlier, the tenant attempted to remove his trade fixtures from the land, but the landlord would not permit it. The Missouri Court of Appeals stated:

"There are many authorities asserting the general rule that the right to remove fixtures by a tenant must be exercised during the tenant's term.

There are also many exceptions to this rule, and the courts do and should favor such exceptions, because forfeitures are not favored in the law, and the rule is frequently found to be a harsh one." 183 S.W. at 350.

The court then pointed out that the exact terms of the lease were highly debatable and that the tenant had defended his ejectment in good faith. The court held that in such situations, a tenant had the right to remove fixtures immediately after the entry of judgment against the tenant. 183 S.W. at 350.

*Idalia Realty* was cited favorably in *State Hwy. Comm. v. Demarest*, 263 Or. 590, 503 P.2d 682 (1972). In *Demarest*, the Oregon Supreme Court recognized the rule that trade fixtures are usually removable by a lessee up until the time the lessee surrenders possession of its leasehold. The lessee in *Demarest* had not surrendered possession of his leasehold but had remained on the property while certain provisions of his lease were being litigated. Citing *Idalia Realty*, the court held that a tenant has a reasonable time to remove trade fixtures after a court judgment finds that a termination of the lease has occurred, providing that the tenant is a party to the action disputing the lease. 263 Or. at 606.

The reasoning in *Idalia Realty* and *Demarest* is persuasive. We hold that when an oil or gas lease is terminated by court judgment because of a failure of the lessee to satisfy the provisions of the habendum clause, and where the lessee defends the action in good faith, the lessee has a reasonable time to remove leasehold equipment after entry of judgment.

The finding of the district court that the Eichman lease terminated and the judgment in favor of the Eichmans for $8,681.79 are affirmed.

The order of the district court awarding the leasehold personalty to the Eichmans is reversed. The case is remanded with directions that the district court issue an order allowing Leavell to enter the property to remove its equipment and to plug the well within such reasonable time as the district court may, in its sound discretion, allow.