NOT DESIGNATED FOR PUBLICATION

No. 115,762

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SCOTT ADAMSON, et al.,
*Appellants/Cross-appellees,*

v.

DRILL BABY DRILL, LLC, et al.,
*Appellees/Cross-appellants.*

MEMORANDUM OPINION

Appeal from Douglas District Court; JAMES R. MCCABRIA, judge. Opinion filed January 26, 2018. Affirmed and remanded with directions.

*John L. Hampton*, of Hampton Law Office, of Lawrence, for appellants.

*Keith A. Brock* and *R. Scott Ryburn*, of Anderson & Byrd, LLP, of Ottawa, for appellees.

Before BUSER, P.J., MALONE, J., and HEBERT, S.J.

BUSER, J.:  This is an appeal by landowners claiming that two oil and gas leases held by owners and companies involved in exploration and drilling operations on the landowners' property have terminated because of the cessation of production of oil and gas in paying quantities.

Scott and Amy Adamson, Fernando Guerrero, Dan and Sara Yardley, Brian Stultz, John and Mary Kay Fortin, Rudy and Sally Sudja, Gayla Spradling, and Spring Creek Acres, LLC (Plaintiffs) are the surface and mineral owners of property located in Douglas County. In February 2014, Plaintiffs filed this action against Drill Baby Drill, LLC, R.T.

1

Enterprises of Kansas, Inc., Town Oilfield Services, Inc., Ojenroc Energy, LLC, and Lance M. Town (Defendants). The Defendants had been conducting oil exploration operations on Plaintiffs' property since early 2013. In their lawsuit, Plaintiffs alleged that the Finnerty Lease and Pearson Lease which allowed Defendants to conduct drilling operations on Plaintiffs' property had expired due to nonproduction.

After discovery was completed, both parties filed motions for partial summary judgment. The Douglas County District Court granted Defendants' motion for partial summary judgment regarding the validity of the Finnerty Lease, and the validity of the Pearson Lease prior to 1989. Subsequently, Defendants filed a motion for summary judgment regarding the validity of the Pearson Lease from 1989 to the present, which the district court also granted. Plaintiffs appeal the adverse judgments and related issues.

Upon our review of the record on appeal, appellate briefs, and oral arguments, we affirm the district court's granting of summary judgment to the Defendants. As to appellees' cross-appeal, we remand to the district court to rule on the issue of attorney fees. The other issues raised by appellees in their cross-appeal are moot.

FACTUAL AND PROCEDURAL BACKGROUND

This appeal involves a dispute between several landowners and oil exploration companies regarding the validity of oil and gas leases on property in Douglas County. Plaintiffs are joint owners of two separate parcels of land. Scott and Amy Adamson, Fernando Guerrero, Dan and Sara Yardley, Brian Stultz, and Spring Creek Acres, LLC, are owners of the surface and mineral rights of the "Pearson Lease," which is located in the north half of the southeast quarter of section 11, township 15 south, range 20 east in Douglas County, Kansas.

John and Mary Kay Fortin, Rudy and Sally Sudja, Gayla Spradling, and Scott and Amy Adamson are owners of the surface rights of the "Finnerty Lease," which is located in the south half of the southeast quarter of section 11, township 15 south, range 20 east in Douglas County, Kansas.

The Defendants claim they possess valid oil and gas leases for both the Pearson and Finnerty property.

The origins of this case began a century ago, on April 2, 1918, when William and Mary Finnerty and Hiram and Bertha Howard granted oil and gas leases to James A. Moon for their property, known as the "Finnerty Lease" and "Pearson Lease" respectively. Each lease contained a termination date five years from its execution, with a habendum clause that provided for the extension of this initial term for "as long thereafter as oil or gas, or either of them, is produced from said land by the lessee."

Over the course of the following decades, these leases were assigned to various companies engaged in oil and gas exploration and drilling. More recently, on November 14, 2012, Altavista Energy, Inc., assigned the Finnerty and Pearson leases to Ojenroc Energy, LLC. R.T. Enterprises of Kansas, Inc., executed a joint operating agreement with Ojencroc Energy on November 1, 2012; and, Drill Baby Drill, LLC, has performed all bookkeeping services relating to the Finnerty and Pearson leases since November 14, 2012.

In January and February 2013, Lance Town advised Plaintiffs that R.T. Enterprises intended to conduct exploration operations on their property. On April 19, 2013, however, Plaintiffs' legal counsel notified Defendants that they believed the Finnerty and Pearson leases were invalid. After negotiations between the two parties failed to produce an amicable resolution, Plaintiffs filed a lawsuit in Douglas County District Court on February 14, 2014. Plaintiffs' claims included separate counts of

3

trespass, conversion, termination of the Finnerty and Pearson leases, negligence, gross negligence, and a request to expunge all purported assignments of the leases.

Defendants' answer to the lawsuit included a motion to dismiss all Finnerty plaintiffs for lack of standing, which the district court granted. Plaintiffs then filed a motion to alter or amend their complaint. The district court granted Plaintiffs' motion and allowed the Finnerty plaintiffs to continue with their claims of trespass and negligence.

Ultimately, Defendants filed a motion for partial summary judgment on June 12, 2015, asking the district court to find that both the Finnerty and Pearson leases were valid. Plaintiffs responded with their own motion for summary judgment on July 21, 2015, in which they sought a finding that the Finnerty and Pearson leases were invalid. In a nine-page memorandum decision dated December 2, 2015, the district court issued detailed findings of fact and conclusions of law. In brief, the district court found the Finnerty Lease was valid, and further determined that Defendants' summary judgment motion should be granted for claims relating to the Pearson Lease prior to 1989.

Subsequently, Plaintiffs filed a motion to alter or amend the district court's findings, a motion for reconsideration, and a motion to stay pending final order. That same day, Defendants filed another motion for partial summary judgment in which they asked the district court to find the Pearson Lease was valid from 1989 until the present.

On March 23, 2016, in a thorough 15-page memorandum decision, the district court denied Plaintiffs' three post-judgment motions and granted Defendants' motion for partial summary judgment regarding the Pearson Lease from 1989 to the present. The district court also declined Plaintiffs' request for permission to file an interlocutory appeal. As a result, Plaintiffs withdrew their remaining claims and the district court entered a final appealable order.

Plaintiffs timely appeal, and Defendants cross-appeal.

INTRODUCTION

On appeal, Plaintiffs contend the district court erroneously granted Defendants' motions for summary judgment. Plaintiffs' principal complaint is that the district court erred when it found the Finnerty and Pearson leases were still valid and had not terminated due to cessation of production of oil and gas in paying quantities.

The standard for summary judgment in Kansas is well established:

"'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citation omitted.]" *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 622, 345 P.3d 281 (2015).

Where there is no factual dispute, appellate courts review a district court's summary judgment order de novo. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013).

The party's briefs address four major issues with regard to the district court's summary judgment rulings:  (1) Did the district court correctly determine that Plaintiffs had the initial burden to prove nonproduction of oil and gas in paying quantities by Defendants on both the Finnerty and Pearson leases? (2) Did the district court correctly

5

grant summary judgment to Defendants regarding the Finnerty Lease based on the ratifications of its mineral rights holders? (3) Did the district court properly grant summary judgment regarding the Pearson Lease up to 1989 and, thereafter, from 1989 through the present? And, (4) assuming the district court's findings were incorrect, would Defendants nevertheless prevail on their equitable defenses of waiver, estoppel, laches, and statute of limitations? Each of these issues will be addressed individually.

DID THE DISTRICT COURT CORRECTLY DETERMINE PLAINTIFFS HAD THE BURDEN TO PROVE NONPRODUCTION OF OIL AND GAS IN PAYING QUANTITIES BY DEFENDANTS?

The critical issue presented on appeal is a purely legal one: Which party bore the burden to prove whether the Finnerty and Pearson leases had terminated due to nonproduction? The appellants challenge the district court's December 2, 2015 conclusion of law that "[p]laintiffs must point out evidence of non-production (or lack of production in paying quantities) and then the burden shifts to Defendants to show facts why any such evidence is not sufficient to warrant termination."

In their motion to reconsider the district court's December 2, 2015 findings, Plaintiffs asserted:

> "The Court mistakenly placed the burden to show the absence of production in paying quantities on Plaintiffs. It is incumbent on the party that is asserting the lease is still alive under the [habendum] clause of the lease to prove that oil or gas had been discovered and continued to be produced in paying quantities. The Court mistakenly place[d] the burden on Plaintiffs to prove the negative."

The district court addressed Plaintiffs' argument in its March 23, 2016 decision, concluding: "[A]s a matter of law, the mere *allegation* of lack of production in paying quantities is not sufficient to shift the initial burden to a lessee to prove paying quantities throughout the life of an oil and gas lease." Citing *RAMA Operating Co. v. Barker*, 47

6

Kan. App. 2d 1020, 286 P.3d 1138 (2012), and *Eichman v. Leavell Resources Corp.*, 19 Kan. App. 2d 710, 876 P.2d 171 (1994), the district court continued:

> "Both cases make clear that when a lessor asserts that a lease has failed for lack of production, it is that lessor's burden to introduce competent evidence to support the allegation of a period of non-production. Only when that burden has been satisfied does the burden shift to the lessee to show whether any identified period of non-production was temporary in nature."

Emphasizing the Plaintiffs' failure to produce evidence of nonproduction, the district court granted Defendants' motion for summary judgment, first, for the Finnerty Lease and the Pearson Lease prior to 1989, and subsequently for the Pearson Lease from 1989 to the present.

On appeal, Plaintiffs reprise their argument made in the district court, that the "burden to prove continued validity of the [Finnerty and Pearson] lease[s] is on the lessee. The lessor is not required to prove a negative." Plaintiffs base this assertion on two cases: *Peatling v. Baird*, 168 Kan. 528, 213 P.2d 1015 (1950), and *Cement Co. v. Brick & Tile Co.*, 100 Kan. 547, 164 P. 1087 (1917).

In their brief, Plaintiffs emphasize the following quote from *Cement Co.*:

> "These documents might suggest that the parties supposed that the lease still had, or might have, some vitality and value, but we do not regard them as having any substantial tendency to show the existence of the conditions necessary to extend its life beyond the three-year period. It was incumbent upon the plaintiff to show affirmatively that oil or gas had been discovered, rather than upon the defendant to prove the negative. In the absence of such a showing the court properly sustained the demurrer." 100 Kan. at 548-49.

7

Plaintiffs also quote *Peatling*, in which our Supreme Court restated the same rule set forth above. 168 Kan. at 537 ("We . . . do note the statement that it was incumbent upon the plaintiff to show affirmatively that oil or gas had been discovered rather than upon the defendant to show the negative."). Based on their understanding of this caselaw, Plaintiffs conclude that the party asserting an oil and gas lease is valid always bears the burden of proving the lease's validity.

We read the relevant caselaw differently. In our view, the cases relied on by Plaintiffs actually support the district court's conclusion that Plaintiffs had the initial burden to prove that Defendants had failed to produce oil in paying quantities on the Finnerty and Pearson leases.

In *Cement Co.*, the plaintiff alleged a valid oil and gas lease existed on the property in question and, as a result, the defendant had an obligation to pay rent. Our Supreme Court ruled that, in order for the plaintiff to sustain its cause of action, it was required to prove a valid lease still existed. The Supreme Court found the inference that a valid lease existed simply because the defendant remained on the property after the lease's initial term had expired was insufficient evidence to prove there was, in fact, a valid lease. Instead, "[i]t was incumbent upon the plaintiff to show affirmatively that oil or gas had been discovered, rather than upon the defendant to prove the negative." 100 Kan. at 549.

Similarly, in *Peatling*, the plaintiff-buyer sought to purchase land from the defendant-seller. The seller assured the buyer that the property was marketable, but after reviewing the abstract of title, the buyer discovered the property had previously been the subject of several oil and gas leases. Ultimately, our Supreme Court determined that the buyer's mere allegation that the property was unmarketable (that is, encumbered by valid oil and gas leases) was not sufficient to prove his claim that the title was actually unmarketable. Citing *Cement Co.*, the court noted the burden was on the plaintiff-buyer

8

to affirmatively prove the continued validity of the oil and gas leases. *Peatling*, 168 Kan. at 537-38.

The district court aptly considered and summarized the key holding of both *Cement Co.* and *Peatling*: "The December 2nd Order [granting partial summary judgment to Defendants] is consistent with [the *Cement Co.*] holding with regard to where the present burdens lie—*on the one bringing the claim*." (Emphasis added.)

Moreover, both *Eichman* and *RAMA* bolster the district court's conclusion of law that Plaintiffs bore the burden of proving nonproduction on the Finnerty and Pearson leases. In *Eichman*, the Eichman family (lessors) brought suit against Leavell Resources Corp. (lessee) alleging that an oil and gas lease on the Eichmans' property had been abandoned due to nonproduction. Leavell countered that oil production on the leased property had never ceased. The Eichmans introduced uncontroverted evidence, however, that showed no oil was produced on the property for nearly two years. Reviewing the evidence, our court applied the following legal principles:

> "It has long been the rule in Kansas that when the primary term of an oil or gas lease has expired and the lease is being held upon the condition of continued production only, all rights under the lease terminate if and when production of oil or gas in paying quantities ceases. [Citation omitted.] 'However, it is also true that a mere temporary cessation of production because of necessary developments or operation do not result in the termination of such lease or the extinguishment of rights acquired under its terms.' *Wilson v. Holm*, 164 Kan. 229, 237, 188 P.3d 899 (1948).
> "If there is a halt in production at an oil leasehold, the burden is upon the lessee to prove that the cessation is temporary and not permanent. *Wilson*, 164 Kan. 229, Syl. ¶ 6. Whether the cessation of production is temporary or permanent is a question of fact to be determined by the trial court. . . ." *Eichman*, 19 Kan. App. 2d at 713-14.

Our court addressed the shifting burdens in the case and concluded there was substantial competent evidence to find the lease had terminated:

> "Eichman introduced uncontested evidence at trial to show that oil production from the lease ceased from the period of February 1988 through July 1990. At that point, the burden shifted to Leavell to prove that the cessation was only temporary and that development of the well was continuing during that period." 19 Kan. App. 2d at 714.

In *RAMA*, 47 Kan. App. 2d 1020, Syl. ¶¶ 7, 8, 13, our court reiterated these legal concepts, holding:

> "7. When the primary term of an oil or gas lease has expired and the lease is being held upon the condition of continued production only, all rights under the lease terminate if and when production of oil or gas in paying quantities ceases.
>
> "8. After the primary term of an oil and gas lease has expired, a mere temporary cessation of production because of necessary development or operation does not result in the termination of such lease or the extinguishment of rights acquired under its terms. The burden to establish a temporary rather than a permanent cessation of production is on the lessee seeking to prove the continued validity of the lease.
>
> . . . .
>
> "13. Under the facts of this case, because of the oil and gas lease operator's failure to successfully controvert the production history on the gas production unit and the resulting 23 months of nonproduction . . . and the fact of at least one undisputed release of record by the operator/lessee of the prior lease on this acreage, we hold that there was no breach of the assignor's covenant of warranty of title and the assignor of the oil and gas lease was entitled to judgment as a matter of law at summary judgment."

As the district court concluded: "In both *Eichman* and *RAMA*, the burden did not shift until the plaintiff had put forward positive evidence to support the allegation that the lease terminated due to insufficient production."

We agree. Kansas caselaw—particularly *Eichman*—makes clear that the district court correctly assigned the initial burden of proving nonproduction to Plaintiffs in this case. *Eichman* provides that the party alleging an oil and gas lease has been abandoned due to nonproduction (in this case, Plaintiffs) must first present evidence that oil production on the property has, in fact, ceased. Once a party has shown nonproduction, the burden shifts to the opposing party (here, Defendants) to prove that any cessation in production was only temporary. We conclude the district court did not err when it found as a matter of law that Plaintiffs bore the initial burden of proving a lack of oil production on the Finnerty and Pearson leases.

As they did in the district court and now on appeal, Plaintiffs recalibrate their burden shifting argument by asserting "this case has always been a *trespass* case." (Emphasis added.) Plaintiffs contend that

> "the district court eventually lost sight of the fact that the initial burden was on [Plaintiffs] to establish [Defendants] had entered upon their land without their permission and/or remained there after any supposed permission had been withdrawn, and then the burden shifted to [Defendants] to establish their defense of a valid oil and gas lease."

Plaintiffs essentially argue they simply had to show Defendants entered onto or remained on Plaintiffs' property without permission, and with that showing, the burden shifted to the Defendants to prove valid leases for the Finnerty and Pearson properties.

The district court, however, rejected this trespass argument it its March 23, 2016 memorandum decision stating:

> "The entirety of Plaintiffs' arguments [in their motion for summary judgment] went to the issue of whether the leases should be held to have terminated by their own terms. The December 2nd order did not reference the law of trespass because Plaintiff never raised it.

11

"None of the cases cited in Plaintiffs' Memorandum in Support of its Motion for Summary Judgment were trespass cases. All of the legal argument and cases cited discuss termination of oil and gas leases. The 'issues set out [t]herein' focused solely on Count III of the Amended Petition, the request to declare the leases invalid.

"Even in their Motion to Reconsider, Plaintiffs in their Response to Defendants' Motion for Partial Summary Judgment cite no trespass cases. Thus, Plaintiffs have not briefed the trespass issue for summary judgment purposes. . . ."

We conclude the district court did not err in this ruling. In their motion for summary judgment, Plaintiffs asked the district court "for an order granting Summary Judgment to Plaintiffs, declaring the oil and gas leases under which Defendants pretend to own some interest, terminated by their own terms and finding that Defendants have no claim to any rights under those leases." Moreover, at the March 25, 2016 hearing on Defendants' motion for partial summary judgment, Plaintiffs' attorney stated:

"*I did not file a motion for summary judgment on the trespass claim.* I have no— had no intention of ever doing that. I think there are too many facts involved in that that a jury needs to decide. I think that would have been a frivolous motion.

". . . What I briefed was what I anticipated their defense was going to be, and that is we came onto your property because we had a valid oil and gas lease. That gave us a right to.

"But when they say valid oil and gas lease, they have the burden of proving the validity." (Emphasis added.)

The record is clear that the trespass claim was not a part of the motions for partial summary judgment. Rather, the issue to be decided was the Plaintiffs' claim in Count III of the amended petition that the Finnerty and Pearson leases had terminated as a matter of law due to nonproduction of oil and gas in paying quantities. Contrary to Plaintiffs' assertions, we agree with the district court's assessment that, at the summary judgment stage of this litigation, the legal burden at issue related to Plaintiffs' claim that the leases

12

had terminated due to lack of production in paying quantities, not the Plaintiffs' claim in a separate count of the amended petition that Defendants had committed a trespass.

DID THE DISTRICT COURT CORRECTLY GRANT SUMMARY JUDGMENT TO DEFENDANTS REGARDING THE FINNERTY LEASE BASED UPON THE SIGNED RATIFICATIONS OF ITS MINERAL RIGHTS HOLDERS?

Plaintiffs challenge the district court's grant of summary judgment to Defendants regarding the validity of the Finnerty Lease. Initially, it is important to recall that Plaintiffs do not own the mineral (including oil and gas) rights to the Finnerty Lease. Defendants raised this precise argument below in their motion to dismiss the Finnerty plaintiffs for lack of standing. The district court granted Defendants' motion, and ruled:

> "Plaintiffs as surface owners only are not parties to the Finnerty lease agreement, nor are they third party beneficiaries to said agreement; therefore, Plaintiffs have no standing to enforce the terms of the Finnerty lease agreement. Only the Mineral Interest Owners have standing to enforce the terms of the Finnerty lease agreement and they are not parties to this action."

The mineral interest owners for the Finnerty Lease are Janice and Larry Kramer, Paul Lewis, and Cynthia Topf. Each of these individuals signed a "Landowner's Certificate and Ratification" in which they declared a valid oil and gas lease existed on the Finnerty property and that Defendants had not breached the lease agreement. Each of the mineral interest owners also received consideration for their ratification of the Finnerty Lease. Plaintiffs deposed only Janice, after which she signed another affidavit affirming her "intent and desire for the [Finnerty] lease to continue to be a valid and continuing oil and gas lease covering [the Finnerty] property."

In their motion for partial summary judgment, Defendants stated as uncontroverted facts that the owners of the minerals covered by the Finnerty Lease ratified the lease and certified that the lease had not been breached or was in default. The

13

Defendants also specified that the ratifications were supported by consideration and attached copies of the checks provided to the owners.

In their response to Defendants' motion for summary judgment, Plaintiffs claimed they controverted the Defendant's factual claim that Janice knowingly and voluntarily ratified the Finnerty Lease, highlighting certain portions of her sworn testimony taken during her deposition. In the Plaintiffs' response they concluded:  "In short, [Janice] had no idea what the original lease said; what she was signing; or why. The depositions of the other two signatories have not been taken, however, we must assume they were equally in the dark." The Plaintiffs also controverted that sufficient consideration was paid, given that $75 was the total amount paid to the three mineral owners.

In its December 2, 2015 memorandum, the district court found that Defendants had produced three sworn statements, captioned "Landowner's Certification and Ratification," along with an affidavit from Janice stating that she is the "'owner of an undivided portion of the oil, gas and other minerals in and under' the land associated with the Finnerty Lease." The document also stated that Kramer executed her certificate for the purpose of affirming her desire to be bound by the terms of the original Finnerty Lease. The district court found that Plaintiffs had not properly controverted the existence of the three certifications.

Plaintiffs again challenged the validity of the Finnerty ratifications in their motion to reconsider and argued the ratification by Janice should have been rejected because to "understand completely what her motives were at the time of the later document, we would need to take her deposition again and examine her under oath." The district court rejected this argument, stating, "no facts to support these legal theories are in the record as required by K.S.A. 60-256(e)(2) or Supreme Court Rule 141 [2017 Kan. S. Ct. R. 205]."

K.S.A. 2016 Supp. 60-256(e)(2) provides:

> "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must, by affidavits or by declarations . . . set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

On appeal, Plaintiffs challenge the district court's finding that they did not controvert any material facts relating to the Finnerty Lease and point out that, in their response to Defendants' motion for summary judgment, they "quoted directly from the deposition of . . . Janice Mary Kramer. And, it is abundantly clear from her testimony that she knew nothing of what she was ratifying." Regarding Paul Lewis and Cynthia Topf—whom Plaintiffs did not depose—Plaintiffs argue: "There is no reason to believe [Defendants] provided any more to [Lewis and Topf] than [they] did to Mrs. Kramer or that the other two individuals were any better informed or knowledgeable when they signed their ratifications for [Defendants'] attorney."

Kansas law provides that a ratification of a lease must be knowingly and understandingly made for consideration. See *Palmer v. Bill Gallagher Enterprises*, 44 Kan. App. 2d 560, 569-70, 240 P.3d 592 (2010). Even considering Janice's subsequent reaffirmation, there appears to be a genuine dispute as to whether Janice knowingly and intelligently ratified the Finnerty Lease. We assume, for purposes of this analysis then, that Plaintiffs adequately controverted the validity of Janice's ratification.

However, as Defendants point out in their brief, Plaintiffs presented no evidence to controvert the ratifications of either Paul Lewis or Cynthia Topf. While Plaintiffs presented deposition testimony to contest Janice's ratification, they offered only speculation that Lewis and Topf "were equally in the dark" without citing any specific facts.

15

The law is clear: "In Kansas, each cotenant of the mineral interest has an equal right to develop the mineral interest or have it developed by a third party." *Dexter v. Brake*, 38 Kan. App. 2d 1005, 1012, 174 P.3d 924 (2008) (citing *Mobile Oil Corp. v. Kansas Corporation Commission*, 227 Kan. 594, 606-07, 608 P.2d 1325 [1980]). Under this legal authority, either Lewis or Topf (or both) could validly ratify the Finnerty Lease *without* Janice's ratification.

We conclude that Plaintiffs' failure to controvert the validity of the Lewis and Topf ratifications with any facts from the record resulted in the district court properly granting Defendants summary judgment as to the validity of the Finnerty Lease.

DID THE DISTRICT COURT PROPERLY GRANT SUMMARY JUDGMENT TO DEFENDANTS REGARDING THE PEARSON LEASE FROM 1923 UNTIL 1989?

Plaintiffs contend the district court erred when it granted partial summary judgment to Defendants regarding the Pearson Lease, from 1923 until 1989, and then from 1989 to the present. We will first consider the time period of 1923 until 1989.

A party seeking summary judgment has the obligation to show, based on appropriate evidentiary materials, that there are no disputed issues of material fact and, thus, that judgment may be entered in its favor as a matter of law. *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, Syl. ¶ 2, 308 P.3d 1238 (2013). However, the burden is not on

> "'the party moving for summary judgment to produce evidence showing the absence of a
> genuine issue of material fact, even with respect to an issue on which the nonmoving
> party bears the burden of proof. Instead, . . . *the burden on the moving party may be
> discharged by 'showing'—that is, pointing out to the district court—that there is an
> absence of evidence to support the nonmoving party's case*.' (Emphasis added.) [Citation

16

omitted.]" *U.S.D. No. 232 v. CWD Investments*, 288 Kan. 536, 555, 205 P.3d 1245 (2009).

Once the movant has discharged its initial burden, "'[t]he party opposing summary judgment . . . has the affirmative duty to come forward with facts to support its claim, although it is not required to prove its case.' [Citation omitted.]" 288 Kan. at 556.

In their motion for partial summary judgment, Defendants set forth as uncontroverted facts that "Plaintiffs are relying entirely upon the records maintained by the Kansas Geological Survey ('KGS') to support their allegations that the Finnerty Lease and the Pearson Lease did not produce oil or gas in paying quantities for several years." In particular, Plaintiffs alleged that the KGS records contained "no evidence of production from 1918 through 1953, and insufficient production during 1964, 1965, 1966, 1967, 1968, 1969, 1970, 1971, 1981 and 1984 for both the Finnerty Lease and the Pearson Lease."

Defendants, however, countered Plaintiffs' reliance on KGS records by setting forth uncontroverted facts that, according to the KGS, its records relating to the two leases would only go back to July 1953; and it "CANNOT AND DOES NOT CERTIFY THE ACCURACY of any oil production records maintained by the KGS" for the leases in question. This is because prior to 1987, oil and gas operators were under no duty or obligation to report oil production from their leases to any state agency. Defendants also argued that Plaintiffs had "waived any right they may have had to assert a termination of the Pearson and Finnerty Leases" because Plaintiffs "waited more than 30 years to assert" their claims.

Plaintiffs controverted Defendants' uncontroverted facts in part by stating that Plaintiffs were "relying in part on the records maintained by the [KGS], but are *relying more heavily on the fact that Defendants have failed to produce evidence of oil and/or*

17

*gas production on the leases*, and there appears to be no evidence of production for decades prior to 1953." Plaintiffs stated that since that time, there had been some production; however, there had been "no showing that the production was continuous and in paying quantities during that entire time." Of note, Plaintiffs raised similar arguments in their own motion for summary judgment, when asserting that Defendants had "no evidence that either of these leases continuously produced oil or gas in paying quantities from the time the leases would have otherwise expired by their terms, to the present."

Reviewing these facts in its December 2, 2015 decision, the district court determined that because of the absence of evidence regarding whether or not there was cessation of production of oil and gas in paying quantities in the early years of the lease, no one disputed the validity of the Pearson Lease in a timely manner, and there was undisputed evidence showing investment of capital and production during the almost 100 years prior to Plaintiffs' lawsuit, that equity required that the district court presume the lease was a valid and existing lease until 1989 when Colt Energy owned and operated the lease. As explained by the district court:

> "Applying the equitable principles from [*Barker v.*] *Kruckenberg*, [33 Kan. App. 2d 545, 105 P.3d 273 (2005)], and the other cases cited by the parties, this Court cannot conceive of a way that it would be equitable to terminate a lease from 1918 based upon a challenge first initiated ninety-seven years later when the undisputed evidence shows investment of capital and production in the interceding years. Further, there is no evidence one way or the other to suggest whether prior owners ratified or tolerated any production lapses or what other agreements may have existed to permit the then-current lessee to continue to hold the lease without termination. There are no record affidavits of production or non-production or notice of lease forfeiture on file . . . .
> . . . .
> "By setting the look back period to 1989, the Court preserves the ability of the Plaintiffs to stand on the law of termination and preserves the ability of the Defendants to put forward facts that would allow the informed application of equity—up to an including the events occurring past November 14, 2012."

18

In their motion to alter or amend, Plaintiffs alleged the district court had created "an oil and gas lease out of thin air" and challenged the district court's application of equity to leases that—in their view—terminated in 1923. The district court further explained its rationale in its March 23, 2016 memorandum decision:

"The Court's legal conclusion was based upon a finding that, prior to 1989, *the evidence was undisputed that when, or whether, or to what extent production under the original 1918 Pearson Lease began or continued (whether prior to or after the original, fixed five-year term) had been lost to time. Such evidence as the parties were able to locate was so old and so inconclusive that, consistent with the principles of law cited in the December 2nd Order, it would be inequitable to determine or terminate the ownership of the mineral interest on such stale evidence*. It is not disputed that the parties located evidence beyond the mere existence of the lease being filed of record that is sufficient to conclude that the lease had been operated to some degree at various points between the filing of the lease and 1989.

"The Court found as an uncontroverted fact that there had been investment of capital and production on the lease between 1918 and 1989. December 2nd Order, Page 8. The Court also found that the lease had been in apparent operation since 1989. Ibid. (Plaintiffs do not challenge either finding in their present Motion.)
. . . .
"What the uncontroverted record demonstrates is that Plaintiffs are relying on Kansas Geological Survey (KGS) records which *that agency cannot and does not certify as to accuracy*. . . .

"*Plaintiffs might as well rely upon 'word of mouth' evidence, or a statement that 'everyone knows' that the leases did not produce in paying quantities during those years. Neither means would be legally competent evidence that would satisfy Plaintiffs' burden to reliably demonstrate that a cessation of production occurred during a particular time or in a particular manner*. If the Court were to allow a lessor to proceed in such a manner, how would any defendant meet the burden of responding to such undefined and amorphous evidence?

"Rather than creating a lease out of thin air, the Court reviewed the record developed by the competing original motions for summary judgment and determined that *the only reliable, existing means to develop the evidence of the extent of the use of the*

19

*mineral interest (if any) that was available to both parties was that which started with the 1989 assignment of the lease to Colt Inc's acquisition of the lease in 1989. . . . The individuals involved, the parties who maintained the actual production records and other sources of competent, reliable evidence are actually available to the parties from that time forward.*

. . . .

"The Court found that, as a matter of law, the evidence prior to 1989 could not meet Plaintiffs' burden. For that reason, summary judgment in favor of Defendants with regard to any claim premised on such evidence was appropriate." (Emphases added.)

On appeal, Plaintiffs raise the same objections they did below, including their primary argument that the burden of proving production on the Pearson Lease prior to 1989 rested with Defendants. We have already considered and discounted that legal contention.

Plaintiffs also take issue with the district court's ruling that the KGS records from the years 1923 until 1989 were not competent evidence to prove nonproduction during those years. At the outset, it was uncontroverted that the KGS did not maintain production records relative to the Pearson Lease prior to 1952. Thus, the KGS records provided no evidentiary basis to support Plaintiffs' burden to prove nonproduction from 1918 to 1952. Since Plaintiffs endeavored to submit the KGS records to prove nonproduction, Defendants' summary judgment motion was properly granted for the period of 1923 until 1953.

With regard to the KGS records from 1953 to 1989, the district court found these records were not competent evidence of either production or nonproduction. In reaching this conclusion, the district court focused on the uncontroverted facts that showed that the KGS specifically averred that it could not and did not certify the accuracy of the production records related to the Pearson Lease. Undoubtedly, one basis for this conclusion was because it was uncontroverted that *prior to 1987*, oil and gas operators

20

were under no duty or obligation to report oil production from their leases to any state agency. Based on the KGS's affirmations, the district court found the KGS records were not "legally competent," and equivalent to "'word of mouth' evidence, or a statement that 'everyone knows.'"

When ruling on a summary judgment motion, a district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. *Nauheim v. City of Topeka*, 52 Kan. App. 2d 969, 978, 381 P.3d 508 (2016) (quoting *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 [2009]). With regard to the KGS records prior to 1989, however, the district court found the contents of the records were not competent evidence for either party to offer as proof of the production or lack of production in paying quantities of oil and gas.

We do not find error with regard to the district court's findings. K.S.A. 60-401(b) defines relevant evidence as evidence having "'"any tendency in reason to prove any material fact."' [Citation omitted.]" *State v. Page*, 303 Kan. 548, 550, 363 P.3d 391 (2015). This definition encompasses two elements: a materiality element and a probative element. With regard to probativity, "'[e]vidence is probative if it furnishes, establishes, or contributes toward proof. Probativity is reviewed for abuse of discretion.' [Citation omitted.]" *State v. McCormick*, 305 Kan. 43, 47, 378 P.3d 543 (2016).

The record is bereft of any indication that the KGS records from 1953 to 1989 furnished, established, or contributed towards proof of the production or nonproduction of oil and gas during that period. The KGS specifically declined to assert the accuracy of the records, and given the voluntary reporting requirements during that time period, the district court did not abuse its discretion by concluding the records were not probative evidence and, thus, inappropriate for establishing material facts. Because Plaintiffs bore the burden to establish nonproduction in paying quantities and the KGS records for that

21

time period were not probative in this regard, the district court did not err in granting Defendants summary judgment on the Pierson Lease from 1953 to 1989.

DID THE DISTRICT COURT ERR WHEN IT GRANTED SUMMARY JUDGMENT TO THE DEFENDANTS REGARDING THE PIERSON LEASE FROM 1989 TO THE PRESENT?

In their second motion for partial summary judgment, Defendants asked the district court to grant summary judgment regarding the validity of the Pearson Lease from 1989 to the present. As before, Defendants argued that Plaintiffs had failed to prove nonproduction on the Pearson Lease during this particular period. Defendants stated as uncontroverted facts that Plaintiffs had not alleged that the Pearson Lease failed to produce in paying quantities after 1984. Moreover, Defendants offered a production table and affidavit showing that the Pearson Lease produced 2.1 barrels of oil per day from September 2011 until August 2012.

In their response to Defendants' motion, Plaintiffs attempted to controvert these factual claims by stating that additional periods of nonproduction in paying quantities existed after 1984 but it was necessary to review expenses and production values for each successive period. Plaintiffs asserted this necessary information had not been produced; however, they anticipated it would be available at the time of trial, and "the question of whether there are additional periods of non-production in paying quantities after 1984 is a question of fact to be decided by the jury at the time of trial." Moreover, Plaintiffs challenged the information regarding production provided by Defendants for failure to comply with K.S.A. 60-256(e).

At the hearing on Defendants' motion, the following colloquy occurred between the district court and Plaintiffs' counsel:

22

"THE COURT: All right. Mr. Hampton, do you have anything to indicate with respect to other discovery that you believe has been produced to [D]efendants that sets forth past 1984 a period of time that your clients are claiming . . . .

"Can you tell this court that any other discovery has been produced that demonstrates what years production in—that production was not in paying quantities?

"MR. HAMPTON: Well, no, because, Your Honor, I—I've never understood that a plaintiff had to prove a defendant's case. And, once again, what—what [defense counsel] is telling you is that I should have asked through interrogatories, I should have taken depositions, to flesh out their case for them."

Thereafter, the district court issued a memorandum decision on March 28, 2016, granting Defendants' motion for partial summary judgment. In pertinent part, the district court found that Plaintiffs had failed to controvert Defendants' material facts and that "Plaintiffs have no evidence to meet their burden to establish a lack of production in paying quantities for the period of 1989 to date." The district court also concluded that "[p]laintiffs have conducted no discovery to determine the issue of paying quantities during this period."

On appeal, Plaintiffs do not argue that they adequately controverted Defendants' material facts related to the lack of evidence of nonproduction from 1989 to the present on the Pearson Lease, or that they presented some evidence that showed they carried their initial burden of proof. Instead, Plaintiffs reassert their claim that Defendants bore the burden of proving production on the Pearson Lease. In this regard, we reaffirm our prior legal conclusion that Kansas law has firmly established that the initial burden of proof rests with the party claiming production on the property has ceased. See *Eichman*, 19 Kan. App. 2d at 713-14. Plaintiffs failed to show at the outset that there was nonproduction in paying quantities on the Pearson Lease from 1989 to the present.

Finally, in their cross-appeal, Defendants agree with the district court's decision to grant summary judgment, but submit that, even if our court finds the district court erred,

23

they would nevertheless be entitled to summary judgment based on their waiver, equitable estoppel, laches, and statute of limitations defenses. Given our holding that the district court correctly granted summary judgment to Defendants, we decline to address these defenses in Defendants' cross-appeal.

THE DISTRICT COURT'S GRANTING OF DEFENDANTS' MOTION TO COMPEL DISCOVERY

Plaintiffs contend the district court abused its discretion when it granted Defendants' motions to compel discovery, allowed "overbroad and unduly burdensome interrogatories . . . to stand," and ordered the further deposition of Plaintiffs' witness, Sara Yardley. Defendants respond that the district court properly granted their motions to compel discovery, but argue in their cross-appeal that the district court should have awarded them attorney fees thereafter.

As a general rule, the "trial court is vested with broad discretion in supervising the course and scope of discovery." *Miller v. Johnson*, 295 Kan. 636, Syl. ¶ 18, 289 P.3d 1098 (2012). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013). A judicial action constitutes an abuse of discretion if: (1) no reasonable person would take the view adopted by the district court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

Plaintiffs first complain they were subjected to "clearly overbroad and unduly burdensome interrogatories . . . which led to the filing of motions to compel, used more as a weapon than a legitimate tool to advance legitimate discovery." Citing secondary authorities on Federal Rule of Civil Procedure 26(b)(1), Plaintiffs further assert that "the district court had before it, on numerous occasions motions to compel that clearly abused

24

the discovery process, and rather than conduct the appropriate and careful review required, resorted to expanding the discovery with no real justification from the demanding party." Plaintiffs also take issue with the district court's order compelling them to provide Sara Yardley for additional deposition testimony.

K.S.A. 2016 Supp. 60-237 governs motions to compel, and provides:

"(a) *Motion for an order compelling disclosure or discovery*. (1) *In general*. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action and must describe the steps taken by all attorneys or unrepresented parties to resolve the issues in dispute.
. . . .
"(3) *Specific motions*. . . .
(B) *To compel a discovery response*. A party seeking discovery may move for an order compelling an answer, designation, production or inspection. This motion may be made if:
. . . .
(iii) a party fails to answer an interrogatory submitted under K.S.A. 60-233, and amendments thereto. . . .
. . . .
"(4) *Evasive or incomplete disclosure, answer or response*. For the purposes of this subsection, an evasive or incomplete disclosure, answer or response must be treated as a failure to disclose, answer or respond."

At the outset, in the conclusion to their appellate briefs, Plaintiffs ask this court to "issue an opinion regarding the discovery issues raised in this case that would be instructive and assist district court judges throughout the State of Kansas when faced with discovery disputes." It is noteworthy that Plaintiffs do not seek any relief from the discovery rulings made in this case or claim that the rulings adversely affected the summary judgements rendered against them by the district court. Rather, they seek our

review of the district court's handling of the discovery disputes to provide clarification to Kansas district court judges regarding the proper handling of discovery issues. While we appreciate Plaintiffs' interest in obtaining our views regarding the appropriate handling of discovery disputes, we must conclude this issue is moot.

As a general rule, Kansas appellate courts do not decide moot questions or render advisory opinions. The mootness doctrine is one of court policy, which recognizes that the role of the court is to "'determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive.' [Citations omitted]." *Stano v. Pryor*, 52 Kan. App. 2d 679, 682-83, 372 P.3d 427 (2016) (quoting *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 [2012]).

Moreover, K.S.A. 2016 Supp. 60-261 provides:

"Unless justice requires otherwise, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order. At evey stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."

Plaintiffs' appellate brief does not identify how the district court's handling of these discovery disputes prejudiced their case or adversely affected their ability to withstand Defendants' successful summary judgment motions. In short, if the district court erred, Plaintiffs have not argued that they were prejudiced or that their substantial rights were violated. See K.S.A. 2016 Supp. 60-261. On this record, whether by statute or judicial policy, we decline to review Plaintiffs' issue regarding discovery disputes.

Finally, in their cross-appeal, Defendants contend the district court erred when it failed to award them attorney fees after it granted their motion to compel discovery. Plaintiffs respond with the simple assertion that because the district court erred in granting Defendants' motion to compel, an award of attorney fees to Defendants is improper. Where a district court has authority to grant attorney fees, its decision is reviewed for abuse of discretion. *Wiles*, 302 Kan. at 81.

The district court neglected to rule on any award of attorney fees to Defendants in its decision granting Defendants' motion to compel, noting simply: "Attorney fees for all issues, including whether fees will be assessed with respect to the Yardley deposition, remains under advisement." Nothing in the record indicates the district court ever ruled on this matter.

K.S.A. 2016 Supp. 60-237(a)(5) states:

"(5) *Payment of expenses; protective orders*. (A) *If the motion is granted, or disclosure or discovery is provided after filing.* If the motion is granted, the court must . . . after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
(i) The movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
(ii) the opposing party's nondisclosure, response or objection was substantially justified; or
(iii) other circumstances make an award of expenses unjust."

Defendants point to the above law and assert that the district court was required to award attorney fees to them. When the language of a fees statute makes an award

mandatory, the question of whether to award fees is not within the district court's discretion. However, the *amount* of fees awarded remains within the sound discretion of the district court. *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 169, 298 P.3d 1120 (2013). Based on this language, Defendants ask that this case be remanded for the district court to determine the proper amount of fees to be awarded.

We agree that this matter should be remanded in order that the district court may enter an appropriate ruling. While the Defendants emphasize one aspect of the mandatory language of the statute, we hasten to point out that K.S.A. 2016 Supp. 60-237(a)(5)(A)(i)-(iii) lists three circumstances in which a district court *must not* award attorney fees to the moving party. It does not appear that the district court ever considered these three circumstances which would preclude an award of attorney fees.

Accordingly, we remand to the district court with directions to determine whether attorney fees should be awarded to Defendants, and if so, to determine the appropriate amount.

Affirmed and remanded with directions.